```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| JIHAD WILLIAMS,<br><br>         Petitioner,<br><br> -against-<br><br>UNITED STATES OF AMERICA,<br><br>         Respondent. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: _3/8/2022_____<br><br>No. 21-CV-6624 (NSR)<br>No. 17-CR-506-2 (NSR)<br>ORDER AND OPINION |

NELSON S. ROMÁN, United States District Judge

  Petitioner, Jihad Williams ("Petitioner" or "Williams"), was charged in a multi-count indictment with engaging in a racketeering conspiracy and a narcotics conspiracy and possessing firearms in furtherance of the narcotics conspiracy. (ECF No. 63.) On February 28, 2019, Williams pled guilty before this Court to one count of participating in a racketeering conspiracy pursuant to a plea agreement ("the Agreement"). (ECF No. 159). On July 30, 2019, this Court sentenced Petitioner to a term of one hundred and eighty (180) months' imprisonment to be followed by a term of supervised release. (ECF No. 173.) Before the Court is Petitioner's motion pursuant to 28 U.S.C. § 2255 to set aside his sentence on the basis of ineffective assistance of counsel. (ECF No. 398.) For the following reasons, Petitioner's motion is DENIED.

## LEGAL STANDARD

  A motion under 28 U.S.C. § 2255 is "an extraordinary remedy." *Moyhernandez v. United States*, No. 02 Civ. 8062 MBM, 2004 WL 3035479, at *1 (S.D.N.Y. Dec. 29, 2004). 28 U.S.C. § 2255(a) provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

§ 2255(b) provides, in relevant part:

> If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A plain reading of the statute contemplates providing a mechanism to detained individuals who seek judicial relief from a wrongfully imposed sentence. It is well settled that § 2255 provides a collateral remedy and not a remedy for an appeal such that it can used to challenge the sufficiency of the evidence." *United States v. Graham*, No. 14-CR-500 (NSR), 2018 WL 798742, at *1 (S.D.N.Y. Feb. 7, 2018) (citing *Dansby v. United States*, 291 F. Supp. 790 (S.D.N.Y. 1968); *Bousley v. United States*, 523 U.S. 614, 621 (1998)).

## **DISCUSSION**

Petitioner alleges he received ineffective assistance of counsel during pretrial proceedings and plea negotiations. (Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion"), ECF No. 398 at 5.) When representing a criminal defendant, counsel's role is to assist defendant in his defense within the permissible rules of law. *See generally Strickland v. Washington*, 466 U.S. 668 (1984). Such assistance includes the duty to advocate defendant's cause, to consult with the accused on all matters of importance and to appraise the defendant of important developments in the course of the prosecution. *Id*. at 688. The Sixth Amendment to the United States Constitution "guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quoting *United States v. Wade*, 388 U.S. 218, 227–28 (1967)), which includes the entry of a guilty plea, *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972), and sentencing, *Mempa v. Rhay,* 389 U.S. 128, 137 (1967). In regards to a plea agreement, counsel has the utmost obligation to advise

his or her client of "the advantages and disadvantages" of the agreement. *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)).

When evaluating counsel's performance, judicial scrutiny must be "highly deferential." *Strickland*, 466 U.S. at 689. In order to reverse a conviction based on ineffective assistance of counsel, the Petitioner must make two showings:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

Where the defendant enters a guilty plea upon counsel's advice, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases'" and "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 56; 59 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [] strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A defendant claiming ineffective assistance "must identify the acts or omissions of counsel that are alleged not

3

to have been the result of reasonable professional judgment." *Id*. at 690. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Here, Petitioner asserts that his attorney, Howard Tanner, provided ineffective assistance by giving him misinformation related to the Agreement and his potential sentence. Petitioner claims Mr. Tanner's representation was deficient as he (i) did not inform Petitioner that he could be "held responsible for additional criminal conduct" but instead stated that he would only held responsible for what he admitted to during his plea allocution; (ii) guaranteed him a two or three year sentence; (iii) promised him a sentence less than two of his co-defendants; (iv) failed to make several objections to the Presentence Report ("PSR"); and (v) failed to adequately explain "the plan" to Petitioner, misinformed him about his sentence calculation, and lied to him about the consequences of his plea. (Motion at 16-17.)

However, a review of the record, including the Agreement and the PSR, does not support Petitioner's contentions. Petitioner alleges that Mr. Tanner "never even attempted to secure a favorable deal" (Motion at 15), however the record shows that this is not true. Mr. Tanner negotiated with the Government and was able to obtain two potential plea agreements, either Petitioner could plead guilty to one count of participating in a racketeering conspiracy with a potential sentence of 0-240 months and the possibility of receiving credit for time served on a related state sentence, or he could plead guilty to possession of a weapon for a Guidelines sentence of 60 months to run consecutively with the state sentence. (Government's Memorandum in Opposition to Jihad Williams' Petition Pursuant to 28 U.S.C. § 2255 ("Opp."), ECF No. 424 Ex. B at 10.) Mr. Tanner has stated in a sworn affidavit that he discussed all of the Petitioner's options with him, and "specifically warned him" about pleading guilty to the racketeering conspiracy, as he would be

"bound by the stipulated overt acts detailed in the Racketeering Conspiracy Plea Agreement, including the murder of Caval Haylett by others, narcotics distribution, and his leadership role enhancement, notwithstanding that he planned to allocute to only selling marijuana and promot[ing] the gang through social media", and that he would have a much higher Guidelines range even with no mandatory minimum. (Opp. Ex. A ¶ 11.) After careful review of each proposed plea, Petitioner decided to accept the plea offer for the racketeering conspiracy. (*Id*.)

On February 28, 2019, Williams executed the Agreement, which was also reviewed and executed by Mr. Tanner. (Opp. Ex. C.) According to the Agreement, Williams agreed to plead guilty to participating in a racketeering conspiracy in exchange for not being further prosecuted criminally. (*Id*.) It was also agreed by Williams, his attorney, and the Government, that the stipulated sentencing guideline offense level was forty (40), Petitioner's criminal history category was V, and the applicable Guidelines sentence was two hundred and forty (240) months' imprisonment. (*Id*.)

As part of the Agreement, Petitioner acknowledged that the sentencing court was authorized to impose "any sentence, up to and including the statutory maximum sentence." (*Id*.) Of significance, Petitioner agreed not to directly appeal or collaterally challenge (including but not limited to an application under 28 U.S.C. §§ 2255 and 2241) "any sentence at or below the Stipulated Guidelines Sentence of 240 months' imprisonment", and that this is "binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein." (*Id*.) A review of the Agreement reveals clear and unambiguous terms. The Court sentenced the Petitioner to a term of one hundred and eighty (180) months, which is below the Guidelines sentence and consistent with the terms of the Agreement.

5

Further, a review of the hearing minutes from the plea allocation reveals Petitioner's plea was made voluntarily and knowingly. He was appraised of his constitutional rights, waived his rights, indicated he had sufficient opportunity to consult with his attorney, was satisfied with his attorney and the services provided, acknowledged that count one carried a maximum term of imprisonment of 20 years, and understood that the court could impose a sentence that is higher or lower than the applicable Guidelines sentencing range. (Feb. 28, 2019 Tr. at 4:15–5:12; 8:9–12:4; 18:9–27:22; 28:18–29:16; 32:6–33:2.) Specifically, the Court informed Petitioner that "if your attorney or anyone else has attempted to estimate or predict what the sentence would be, it is possible that this estimate or prediction could be wrong" and "if your sentence is different from what your attorney or anyone else told you it might be or if it's different from what you expect, you will still be bound to your guilty plea and you will not be allowed to withdraw your guilty plea." (*Id*. at 21:4-22.) Petitioner stated he understood. (*Id*.) Therefore, the record supports a finding that Petitioner's plea was entered intelligently.

Petitioner argues that his allocution is a "mere technicality" which should not be relied on because Mr. Tanner told him exactly what to say. (Motion at 17-18.) Specifically, Plaintiff points to several instances in the transcript that he believes support his position, including (i) three instances where he conferred with Counsel, (ii) when Petitioner stated his "position in the Uptown gang is what [he] just told the Court" during his allocution, specifically that he agreed to be a part of Uptown and sold marijuana and promoted the enterprise on social media, and (iii) one instance where the Court mistakenly addressed Mr. Tanner before correcting itself and continuing the proceeding. (Feb. 28, 2019 Tr. at 15:12–16:5; 21:16-24; 25:4-10; 29:23–32:10.)

However, "[i]n the absence of any credible evidence to the contrary, the court is permitted to rely upon the defendant's sworn statements, made in open court, that[] his plea was knowing and

voluntary, he discussed the plea with his attorney, he knew that he could not withdraw the plea, he knew that no promises had been made except those contained in the plea agreement, and he was satisfied with the advice of counsel." *Pringle v. United States*, No. 10 Civ. 9659(WHP), 2011 WL 3792820, at *3 (S.D.N.Y. Aug. 25, 2011); *see also United States v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011) ("a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [his] guilty plea") (internal quotation marks omitted). The transcript of the hearing does not include any statements that could possibly consist of "credible evidence" that Petitioner's counsel told him he would only be given a short sentence for selling marijuana.

Further, the plea hearing transcript reveals Williams provided sufficient factual support for each of the elements of the crime of participating in a racketeering conspiracy. The elements include (i) the criminal enterprise existed; (ii) the enterprise affected interstate or foreign commerce; (iii) the enterprise was involved in the commission of two or more racketeering acts; and (iv) Petitioner knowingly and willfully became a member of the racketeering conspiracy. (Feb. 28, 2019 Tr. at 12:18–13:9.) Williams admitted that he was a part of the Uptown gang, and in support of the gang, he agreed to sell marijuana more than once and promote the enterprise through social media. (*Id*. at 29:23–31:14.) His admission is sufficient to support each of the four elements of the racketeering conspiracy as charged in the indictment, with the sale of marijuana comprising the required predicate acts.

Once Petitioner pled guilty, Mr. Tanner had several conversations with him about the PSR and Guidelines sentence. Specifically, on June 19, 2019, Mr. Tanner states he met with Petitioner and they reviewed the final PSR "in its entirety", and on July 9, 2019, Mr. Tanner again met with Petitioner and "again reviewed all aspects" of the final PSR. (Opp. Ex. A ¶¶ 14-15.) He told

Petitioner that he could raise any objection with the Court as to the PSR, but Petitioner never raised any factual errors. (*Id*. ¶ 14.) Mr. Tanner advised Petitioner that the Government would likely request a Guidelines sentence of 20 years, and that "it was the Court's Guidelines calculation that controls and that only the Court determines what his ultimate sentence will be." (*Id*. ¶ 15.) At Petitioner's sentencing, he stated to the Court that he had read and reviewed PSR and discussed it with his attorney. (July 24, 2019 Tr. 6:6-11.) The PSR describes Petitioner as "a member and leader of the Uptown gang" who was "primarily focused on the Uptown gang's acts of violence," and "possessed many of the gang's shared guns." (ECF No. 217 ¶ 46). The PSR also describes how Petitioner provided another Uptown gang member with a gun that was used in the murder of an innocent bystander in 2016, and how he was responsible for the distribution of crack cocaine. (*Id*. ¶¶ 46-47.) Based on these facts, as well as Petitioner's criminal history category and offense level, the PSR recommended a Guidelines sentence of 240 months' imprisonment. (*Id*. at 27.)

Petitioner also avers that the sentencing hearing transcript supports his arguments. (Motion at 19-20.) While Plaintiff did express some confusion during sentencing, this was not due to his attorney. When the Court asked why the case warranted a Guidelines sentence, the Government responded that the sentence would be sufficient but not greater than necessary based on Petitioner's conduct, which included supplying a weapon that was used in a murder. (July 24, 2019 Tr. 7:16-24.) In response, Mr. Tanner argued the Government was essentially asking the Court to sentence Petitioner as if he committed the murder himself and reminded the Court and the Government of Petitioner's plea allocation. (*Id*. at 9:5-10.) After the Court sentenced him to 180 months, Petitioner stated he was "a little lost" as he believed the Court sentenced him to "15 years for weed selling." (*Id*. at 16:17-24; 19:2-19.) The Court explained he was sentenced based on his plea and conviction for participating in the racketeering conspiracy, which included all of the activity he purportedly

engaged in during the conspiracy. (*Id*. at 19:20–20:10.) Mr. Tanner then clarified that Petitioner was confused about what his overt acts were in his plea allocution as opposed to his responsibility for the acts committed during the conspiracy, and that he "attempted to explain that to him." (*Id*. at 24:17-22.)

Petitioner also alleges that Mr. Tanner "drilled . . . into his [] brain" that he would receive a low single-digit sentence, and that he "made the plea deal that [Petitioner] ultimately accepted sound better than" the 60-month plea deal. (Motion at 19.) However, both of these allegations are disputed by the Agreement, the PSR, the record, and Mr. Tanner's affidavit. (Opp. Ex. A ¶¶ 11; 14-15.) Therefore, Petitioner's contentions are denied. *See Berrios v. United States*, No. 07-CV-4441 (JS), 2009 WL 2226757, at *3 (E.D.N.Y. July 23, 2009) ("When an attorney's affidavit credibly contradicts a habeas petitioner's ineffective assistance of counsel claim, the Court is entitled to deny the petition without holding an evidentiary hearing.").

Accordingly, based on a review of the record as well as Mr. Tanner's affidavit and exhibits, Petitioner has failed to show Mr. Tanner's performance was prejudicial in any way. While Petitioner may have assumed the Court was going to give him a shorter sentence, he was counseled multiple times by both Mr. Tanner and the Court that his sentence was in the Court's discretion, and that the Guidelines provided a sentence from anywhere between 0 to 240 months' imprisonment.

## CONCLUSION

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate his conviction on the basis of ineffective assistance of counsel is DENIED. Defendant failed to demonstrate entitlement to the relief sought. The Clerk of the Court is directed to terminate the motion at ECF Number 398, and terminate the 21-CV-6624 action. The Clerk of Court is also directed to send a copy of this Order to pro se Petitioner, and show service on the docket.

Dated: March 8, 2022         SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge